[Cite as *Gantous v. Basing*, 2022-Ohio-3001.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## GEAUGA COUNTY

| | |
|---|---|
| JOSEPH D. GANTOUS, | CASE NO. 2021-G-0005 |
| Plaintiff-Appellee/<br>Cross-Appellant, | Civil Appeal from the<br>Court of Common Pleas |
| - v - | |
| SHEILA M. BASING, | Trial Court No. 2018 DC 000017 |
| Defendant-Appellant/<br>Cross-Appellee. | |

# O P I N I O N

Decided: August 29, 2022
Judgment: Affirmed in part and reversed in part; remanded

*Annette C. Trivelli*, 147 Bell Street, Suite 201, Chagrin Falls, OH 44022 (for Plaintiff-Appellee/Cross-Appellant).

*Frank R. Brancatelli*, 7318 Gallant Way, Painesville, OH 44077 (for Defendant-Appellant/Cross-Appellee).

THOMAS R. WRIGHT, P.J.

{¶1} This matter is before us on the appeal of Sheila M. Basing ("Sheila") and the cross-appeal of Joseph D. Gantous ("Joseph") from the trial court's judgment overruling objections to the magistrate's decision and granting the parties a divorce. The judgment is affirmed in part and reversed in part, and the matter is remanded to the trial court for further proceedings.

{¶2} The parties were married in 2000 and have two children together, both of whom are now emancipated. Sheila also has a child from a previous marriage.

{¶3} Joseph filed for divorce in 2018. A bench trial was held before a magistrate, following which the parties submitted written closing arguments. The magistrate issued his decision in July 2020. The magistrate determined values for the parties' marital assets, of which he recommended awarding to Joseph a total value of $65,150.00 and to Sheila a total value of $126,696.00. To equalize the award, the magistrate recommended a distributive award in favor of Joseph in the amount of $30,773.00 and that Sheila also transfer to Joseph a bank account with the value of $18,108.00. The magistrate additionally determined that there was insufficient evidence to conclude that either party had committed financial misconduct. Other magistrate recommendations were that each party retain his or her own OPERS retirement annuity as his or her separate property, free from any claim by the other; that neither party is entitled to spousal support; and that Sheila pay $10,000.00 in attorney's fees to Joseph.

{¶4} Both parties filed objections to the magistrate's decision, which the trial court overruled. The court adopted the magistrate's decision in full (with one modification as to the date of the marriage) and granted the parties a divorce on March 10, 2021. From the divorce decree, Sheila advances six assignments of error; Joseph advances three.

{¶5} The parties' first assigned errors both challenge the trial court's failure to find that the other had engaged in financial misconduct, each arguing that the other intentionally failed to disclose financial information:

> **[Sheila 1.]** The trial court erred to the prejudice of the defendant-appellant, Sheila M. Basing when it failed to find that plaintiff-appellee had engaged in willful financial misconduct by failing to state his total income as required pursuant to R.C. 3105.171(E)(3) precluding the Magistrate

2

from considering the award of spousal support because of the disparity of the parties' income.

**[Joseph 1.]** The trial court erred as a matter of law and abused its discretion in its failure to find financial misconduct on the part of appellant/cross-appellee, Sheila M. Basing pursuant to O.R.C. 3105.171(E).

{¶6} The burden of proving financial misconduct rests with the complaining spouse. *Davis v. Davis*, 11th Dist. Geauga No. 2011-G-3018, 2013-Ohio-211, ¶ 104. In this context, the term "financial misconduct" includes "the dissipation, destruction, concealment, nondisclosure, or fraudulent disposition of assets[.]" R.C. 3105.171(E)(4). "'Financial misconduct implies some type of wrongdoing which results in the offending spouse either profiting from the misconduct or intentionally defeating the other spouse's distribution of marital assets.'" (Citations omitted.) *Cianfaglione v. Cianfaglione*, 11th Dist. Lake No. 2017-L-134, 2019-Ohio-71, ¶ 51, quoting *Chattree v. Chattree*, 2014-Ohio-489, 8 N.E.3d 390, ¶ 18 (8th Dist.); *Calkins v. Calkins*, 2016-Ohio-1297, 62 N.E.3d 686, ¶ 15 (11th Dist.) (all acts listed in the statute contain some element requiring "wrongful scienter").

{¶7} Pertinently, "[t]he court shall require each spouse to disclose in a full and complete manner all marital property, separate property, and other assets, debts, income, and expenses of the spouse." R.C. 3105.171(E)(3). "If a spouse has substantially and willfully failed to disclose marital property, separate property, or other assets, debts, income, or expenses as required under division (E)(3) of this section, the court may compensate the offended spouse with a distributive award or with a greater award of marital property not to exceed three times the value of the marital property, separate

Case No. 2021-G-0005

property, or other assets, debts, income, or expenses that are not disclosed by the other spouse." R.C. 3105.171(E)(5).

{¶8} """The time frame in which the alleged misconduct occurs may often demonstrate wrongful scienter, *i.e.,* use of marital assets or funds during the pendency of or immediately prior to filing for divorce.""" *Calkins* at ¶ 16, quoting *Lindsay v. Lindsay,* 6th Dist. Sandusky No. S-11-055, 2013-Ohio-3290, ¶ 21, quoting *Jump v. Jump,* 6th Dist. Lucas No. L-00-1040, 2000 WL 1752691, *5 (Nov. 30, 2000). "Another consideration is whether the spouse made 'critical and unilateral decisions concerning the parties' retirement funds and other assets in anticipation of [the] divorce.'" *Calkins* at ¶ 16, quoting *Smith v. Smith,* 9th Dist. Summit No. 26013, 2012-Ohio-1716, ¶ 21.

{¶9} "While a trial court enjoys broad discretion in deciding whether to compensate one spouse for the financial misconduct of the other, the initial finding of financial misconduct must be supported by the manifest weight of the evidence." *Calkins*, 2016-Ohio-1297, at ¶ 17, citing *Davis*, 2013-Ohio-211, at ¶ 77 and *Smith v. Emery-Smith*, 190 Ohio App.3d 335, 2010-Ohio-5302, 941 N.E.2d 1233, ¶ 50 (11th Dist.). Under this standard, the reviewing court must consider all the evidence in the record, the reasonable inferences, and the credibility of the witnesses to determine whether the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the decision must be reversed. *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *Smith v. Smith,* 11th Dist. Geauga No. 2013-G-3126, 2013-Ohio-4101, ¶ 42, citing *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517.

{¶10} Here, the magistrate concluded that there was insufficient evidence to support a finding of financial misconduct on the part of either party.

4

**{¶11}** In her first assigned error, Sheila contends the trial court erred in adopting this conclusion because Joseph committed financial misconduct by failing to disclose his total income. She insists that Joseph failed to disclose approximately $18,500.00 worth of income from repairing cars as "J&G Auto," which he "ran through his checking account statement in [2017,] the year prior to his filing for divorce."

**{¶12}** Joseph responds that J&G Auto is not a for-profit business. He testified that he made anywhere from $800.00 to $1,500.00 in the two years prior to trial for assisting a few family members and friends with vehicle repairs. Joseph's testimony is that J&G Auto is merely the name of a commercial account he opened at a local auto parts store in order to receive a discount on parts used to repair the various vehicles. Joseph testified that friends and family members charge on the account and then reimburse him for the purchase. He deposits the funds in his checking account and then pays off the store account. Joseph further testified that some deposits made to his checking account are loans from his parents to help him pay bills, which he pays back when he is able.

**{¶13}** With respect to Joseph's income, the magistrate found as follows:

> 7. [Joseph] works for the City of Cleveland Heights as a member of its road crew. In 2017 he had gross earnings of about $61,300. His duties include snowplowing, so his income can vary considerably from year to year depending on the amount of overtime he gets during the winter.
>
> 8. [Joseph] has occasionally worked, and continues to work, on cars, doing maintenance, repairs and other miscellaneous mechanical jobs. He has earned relatively small amounts of money doing this – less than $2,000 in the two years before March 2020. He has an account at an auto parts store where he buys supplies and parts that he uses when he works on cars. He testified that the people on whose cars he works reimburse him for the parts and supplies he buys.

5

When considering whether either party was entitled to spousal support, the magistrate found, in part, that "[Joseph's] present earning ability is between $60,000 and $65,000 per year. There is insufficient evidence to permit the Court to find that [Joseph] earns any profit from fixing cars." The magistrate concluded that there is no evidence that Joseph concealed money in order to defeat Sheila's claim for marital property. Sheila points to nothing in the record that convinces us it was error for the trial court to adopt this conclusion.

{¶14} Sheila's first assigned error is without merit.

{¶15} In his first assigned error, Joseph contends that the court should have found that Sheila committed financial misconduct because she intentionally failed to disclose certain bank accounts during the divorce proceedings that she also failed to disclose during the marriage. Sheila has not responded to this argument on appeal.

{¶16} The magistrate concluded as follows:

> Despite the obscurity surrounding the parties' financial dealing, particularly [Sheila's] tangled transactions involving the Huntington Bank accounts, this Magistrate has concluded that everything in those accounts is marital property. This Magistrate has rejected [Sheila's] claims that money in the accounts is really her children's. The total balances in those accounts remained relatively stable over several years, which suggests that no marital funds were concealed or spirited away. This is not to say that the parties spent money prudently or wisely, but only that there is no evidence that [Sheila] * * * concealed money or property to defeat [Joseph's] claim for marital property. The Court's only remedy for financial misconduct is financial – to compensate the wronged spouse for the marital property that the other misused. Unless there is evidence of the value of that property, the Court cannot offer that remedy.

{¶17} Joseph does not direct us to anything in the record that establishes Sheila made critical and unilateral decisions concerning marital assets *in anticipation of divorce*

6

or that she profited from her conduct.  As stated, these accounts existed for several years, during which time the total balances remained relatively stable.  Further, the magistrate concluded the funds in these accounts are marital property subject to distribution and not, as Sheila claimed, belonging to her children.  Although Sheila's financial decisions and belated disclosures with respect to these accounts could be characterized as less than commendable, the conclusion that she did not engage in financial misconduct is not against the manifest weight of the evidence.

{¶18}  Joseph's first assigned error is without merit.

{¶19}  We next consider the parties' multiple assigned errors pertaining to the trial court's adoption of the magistrate's determinations of marital and separate property.

{¶20}  The allocation and division of marital and separate property is governed by statute: "In divorce proceedings, the court shall * * * determine what constitutes marital property and what constitutes separate property.   * * *   [U]pon making such a determination, the court shall divide the marital and separate property equitably between the spouses, in accordance with this section."  R.C. 3105.171(B).

{¶21}  "Separate property" includes "[a]ny real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage[.]"  R.C. 3105.171(A)(6)(a)(ii).

{¶22}  "Marital property" includes (i) all real and personal property currently owned by one or both of the spouses that was "acquired by either or both of the spouses during the marriage"; (ii) all interest that one or both of the spouses currently has in any real or personal property that was "acquired by either or both of the spouses during the marriage"; (iii) "income and appreciation on separate property, due to the labor, monetary,

7

or in-kind contribution of either or both of the spouses that occurred during the marriage"; and (iv) certain participant accounts of either of the spouses to which moneys have been deferred during the marriage plus any income derived from the investment of those moneys during the marriage. R.C. 3105.171(A)(3)(a).

{¶23} "Property acquired during marriage is presumed to be marital unless it can be shown to be separate." *Sedivy v. Sedivy*, 11th Dist. Geauga Nos. 2006-G-2687 & 2006-G-2702, 2007-Ohio-2313, ¶ 21, citing *McLeod v. McLeod*, 11th Dist. Lake No. 2000-L-197, 2002-Ohio-3710, ¶ 16. "'"[T]he party seeking to have a particular asset classified as separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to separate property."'" *Speece v. Speece*, 2021-Ohio-170, 167 N.E.3d 1, ¶ 35 (11th Dist.), quoting *O'Grady v. O'Grady*, 11th Dist. Trumbull No. 2003-T-0001, 2004-Ohio-3504, ¶ 48, quoting *Smith v. Smith*, 11th Dist. Trumbull No. 98-A-0034, 1999 WL 1488950, *4 (Oct. 15, 1999). A trial court's characterization of property is a question of fact that must be supported by the manifest weight of the evidence. *Speece* at ¶ 36.

{¶24} Sheila's second assigned error relates to the Huntington bank accounts referenced above:

> **[Sheila 2.]** The trial court erred in finding that the defendant-appellant transferred money between accounts to "hide" money from the plaintiff-appellee is [sic] inconsistent with the fact that the money was clearly identified in the accounts assigned for her children and for payment of her bills in a methodical manner as the parties had agreed to keep their accounts separate and was not marital property.

{¶25} Sheila's issue presented for review questions whether the court erred in finding that she "hid" money from Joseph by transferring money between accounts. The

8

substance of her argument, however, is that the court erred in determining that each of these accounts was marital property.

{¶26} Sheila opened multiple accounts at Huntington Bank in 2014. In 2017, Sheila changed the accounts from individual to joint and survivor, with the parties' adult daughter listed as a signator. There were numerous deposits to and withdrawals from these accounts throughout the years, some of which were made by their daughter and some by Sheila's adult son from a previous marriage. There were also numerous transfers made among and between the various accounts. Nevertheless, the average total balance of all the accounts remained essentially the same from 2015 through 2018.

{¶27} Sheila testified that each account is used by her for a specific purpose and that some of the accounts belong to her three children. The magistrate found that Sheila offered no credible explanation for her management and use of these accounts and accorded her testimony little weight. There was no evidence, however, that the funds in the accounts were used improperly. Thus, the magistrate determined the funds in these multiple accounts are marital property subject to equitable division.

{¶28} Sheila did not meet her burden to establish that the funds in the accounts were acquired prior to the date of the marriage or that they otherwise constituted separate property. Further, the court's determination that Sheila owns each of the accounts, and not her children, is not against the manifest weight of the evidence.

{¶29} Sheila's second assigned error is without merit.

{¶30} In her third assigned error, Sheila contends that the trial court erred in finding that Joseph reimbursed her for personal property she lost in a barn fire during the marriage:

9

**[Sheila 3.]** The trial court erred in finding that the plaintiff-appellee did pay defendant-appellant for her personal property resulting from the barn fire is [sic] inconsistent with the plaintiff-appellee's own testimony.

{¶31} A fire occurred at the parties' residence in 2012, destroying the barn and its contents. The insurer inventoried the destroyed personal property, nearly all of which was less than five years old, and paid out approximately $37,060.00. Sheila testified that property with a total value of $11,550.56 belonged to her. Sheila testified that she asked Joseph to pay her $11,550.56 from the insurance proceeds and that he could keep the remainder. She testified that Joseph never paid her. Joseph testified that he did pay Sheila for personal property that she replaced but could not remember how much he paid her or how he paid her, i.e., with cash or by check. Joseph also testified that Sheila agreed to remove her name from the mortgage on the marital home in exchange for Joseph using $10,000.00 of the insurance proceeds towards refinancing the home.

{¶32} All of the destroyed property Sheila claimed as "hers" was marital property, as it was acquired during the marriage and was not otherwise demonstrated to be separate property. The magistrate found Sheila's testimony as to the issue of payment from Joseph was not credible and that she did receive at least $11,000.00 in the form of two deposits to a credit union account solely in her name. This finding is not inconsistent with Joseph's testimony. Further, the magistrate's decision on this issue is not against the manifest weight of the evidence.

{¶33} Sheila's third assigned error is without merit.

{¶34} Next, both parties challenge the court's determination regarding real property that served as the parties' marital residence until 2007:

Case No. 2021-G-0005

**[Joseph 2.]** The trial court erred and/or abused its discretion by failing to find 100% of the equity in the property located at 22400 Seabrooke Avenue, Euclid, OH 44123 was marital.

**[Sheila 4.]** The trial court erred in finding that the property located at 22400 Seabrooke Avenue, Euclid, OH 44123 was separate property but awarded the Plaintiff a marital interest in said property in the sum of $25,095.

{¶35} With respect to the Seabrooke Avenue property, the magistrate made the following findings of fact:

26. [Sheila's] mother owned the residence at 22400 Seabrook, in Euclid, for some years before the parties' marriage. It appears that [Sheila] owned a part interest in this property before 1998. In or about 2007, [Sheila's] mother quitclaimed her remaining interest in the property to [Sheila]. The Seabrook property is [Sheila's] separate property.

27. The parties stipulated that the Seabrook house has a current fair market value of $70,000.

28. In 2000, the parties took out an equity line of credit secured by the Seabrook house. The loan proceeds were about $25,095. They used the money to improve the house. The parties did some of the work themselves, and hired contractors to do other work. They added a third-floor master suite, and performed or had contractors do electrical, plumbing, and drywall work.

29. Neither party offered testimony of the value of the Seabrook house before and after the improvement work was done.

30. By 2002, the first equity line had been paid in full. The parties took out another loan for $45,000, using the Seabrook house as security, in 2003. They used the money to buy cars and to pay off debt. There is some evidence that they may have used a part of that money to make improvements at the Seabrook house, but the evidence is fragmentary and unclear. In 2004, they again borrowed money secured by a mortgage on the house, obtaining a $75,000 line of credit. The evidence is unclear as to what the parties did with this money. There is insufficient evidence to enable this Magistrate to find that the parties invested any money from the 2003 and 2004

11

loans in improvements to the house. [Sheila] testified that the parties used $33,000 of the loan proceeds to buy lots at the Pymatuning campground. This testimony is not credible. A modest balance of this last line of credit remains outstanding.

31. There is a marital interest in the Seabrook property that stems from the investment of marital money – the loan proceeds – and the parties' labor in the improvements they made in 2000 with the proceeds of the equity line. The parties offered no evidence of the actual increase in the property's value that resulted from those improvements. In the absence of other evidence of the increase in the property's value, this Magistrate finds that its value increased by an amount equal to the loan proceeds. The marital interest in the Seabrook house is $25,095.

{¶36} Joseph contends it was error for the court to not find that *all* of the equity in the Seabrooke property was marital property. He asserts that the refinancing and utilization of marital funds to pay off equity loans on the property, as well as his provision of labor to improve the property, renders the entire fair market value marital property.

{¶37} "The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, *except* when the separate property is not traceable." (Emphasis added.) R.C. 3105.171(A)(6)(b). "Thus, traceability has become the focus when determining whether separate property has lost its separate character after being commingled with marital property. The party seeking to have a particular asset classified as separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to separate property." (Internal citations omitted.) *Peck v. Peck*, 96 Ohio App.3d 731, 734, 645 N.E.2d 1300 (12th Dist.1994); *Speece*, 2021-Ohio-170, at ¶ 34-35.

{¶38} The parties stipulated that the Seabrooke property has a current fair market value of $70,000.00. By finding that the value of the property had increased by an amount

12

Case No. 2021-G-0005

equal to the $25,095.00 loan proceeds, the magistrate essentially found that the equity in the property at the time of the marriage was $44,905.00 and that this amount is Sheila's separate property. However, Sheila presented no documentation or other evidence to sufficiently trace this amount to her separate property. Because she did not meet her burden to trace the amount of separate property, the commingling of the Seabrooke property with the marital estate during the parties' 21-year marriage—i.e., the loan proceeds used for improvements, the marital funds used to pay off the loan, and the parties' own labor—destroyed its identity as separate property. *See, e.g., Sicilia v. Sicilia*, 7th Dist. Columbiana No. 01 CO 57, 2002-Ohio-6893, ¶ 8, citing *Peck* at 734 ("When there is conflicting testimony as to the amount of separate property in a marital home and no documentation is offered in support of either parties' testimony, the trial court does not abuse its discretion by coming to the conclusion that the entire marital home was marital property and none of it constituted separate property.").

{¶39} We therefore conclude that the magistrate's finding regarding the Seabrooke property is against the manifest weight of the evidence. The entire amount of equity in the home must be considered marital property. This error renders this court unable to fully review the trial court's decision regarding the division of marital property. Thus, this matter will be remanded to the trial court for further proceedings.

{¶40} Joseph's second assigned error has merit.

{¶41} On her part, Sheila contends it was error to find the Seabrooke property was separate property, while finding a marital interest in an amount equal to the 2000 line of credit. Sheila's argument as to why this was error is less than clear. She appears to suggest that because the parties maintained separate bank accounts, marital funds were

13

not used to pay the monthly amortization payment. The definition of "marital property" defeats this suggestion. *See* R.C. 3105.171(A)(3)(a). Nevertheless, our disposition of Joseph's second assigned error renders her argument moot.

{¶42} Sheila's fourth assigned error is without merit.

{¶43} In her fifth assigned error, Sheila contends the trial court's valuation of the marital interest in the parties' timeshare is not based on credible evidence:

> **[Sheila 5.]** The trial court erred and abused its discretion in finding that the marital interest in Westgate Resorts Timeshare, intangible personal property, was valued at $25,300, not based on any credible evidence or appraisal.

{¶44} The magistrate found as follows:

> 36. In 2006, the parties bought a timeshare in Gatlinburg, Tennessee from Westgate Resorts, for $14,900. [Sheila] charged the down payment of $1500 to her credit card and made monthly payments on the balance.
>
> 37. Over the following several years, the parties together, or [Sheila] separately, upgraded the timeshare about five times. [Joseph] was removed as an owner of the timeshare in 2013, and [Sheila] upgraded the timeshare three times after that. The final upgrade, in 2018, cost $54,300. [Sheila] financed $29,000 of that amount, presumably paying the remainder by rolling over the equity that accumulated. The value of the timeshare is $54,300, less the balance due of the financed amount. The evidence does not disclose that current outstanding balance. The acquisition of the timeshare, and all upgrades, occurred during the marriage.
>
> 38. Absent evidence as to the current balance on the debt incurred for the latest upgrade, this Magistrate will assume that the balance due is $29,000 and that the marital interest in the timeshare is $25,300, the amount of the equity before the 2018 upgrade.

{¶45} Sheila contends that because the value of the timeshare is questionable, it should be ordered sold and the value split between the two parties. Joseph responds

14

that the value of the timeshare is not questionable, as he introduced documents received directly from Westgate establishing the timeshare's value, to which Sheila produced no evidence or authority to the contrary.

{¶46} Sheila's entire argument is that "anyone should note a timeshare is intangible personal property that gives the owner the right to pay maintenance fees that allows the use of its premises for a period of time and in effect has no intrinsic value (equity) that would allow it to be sold for the price that is owed." She provides this court with no citation to any authority in support of her argument, nor does she direct us to anything in the record that convinces us the trial court abused its discretion in its valuation of this asset.

{¶47} Sheila's fifth assigned error is without merit.

{¶48} In her sixth assigned error, Sheila contends the trial court failed to consider the valuation of the parties' OPERS retirement accounts:

> **[Sheila 6.]** The trial court erred when it failed to consider the valuation of the parties OPERS retirement accounts as marital and separate property (premarital) when dividing the marital property.

{¶49} "In making a division of marital property and in determining whether to make and the amount of any distributive award under this section, the court shall consider all of the following factors:  * * * Any retirement benefits of the spouses, excluding the social security benefits of a spouse except as may be relevant for purposes of dividing a public pension * * *."  R.C. 3105.171(F)(9).

{¶50} Generally, pension or retirement benefits earned during the marriage are marital assets and a factor to be considered in the division of property.  *Hoyt v. Hoyt*, 53 Ohio St.3d 177, 178, 559 N.E.2d 1292 (1990).  "When considering a fair and equitable

15

distribution of pension or retirement benefits in a divorce, the trial court must apply its discretion based upon the circumstances of the case, the status of the parties, the nature, terms and conditions of the pension or retirement plan, and the reasonableness of the result." *Id.* at paragraph one of the syllabus. "The trial court should attempt to preserve the pension or retirement asset in order that each party can procure the most benefit, and should attempt to disentangle the parties' economic partnership so as to create a conclusion and finality to their marriage." *Id.* at paragraph two of the syllabus.

**{¶51}** "[A]ny given pension or retirement fund is not necessarily subject to direct division but is subject to evaluation and consideration in making an equitable distribution of both parties' marital assets." *Id.* at 180. "There are several alternatives to a direct [ ] division, such as an immediate offset or a current assignment of proportionate shares, with either a current distribution or a deferred distribution." *Id.* at 181.

**{¶52}** "In some instances, the parties' pension and retirement funds may be the most significant marital asset of one or both spouses. Thus the trial court must understand the intricacies and terms of any given plan and, if necessary, require both of the parties to submit evidence on the matter in order to make an informed decision." *Id.*, citing *Willis v. Willis*, 19 Ohio App.3d 45, 48, 482 N.E.2d 1274 (11th Dist.1984). "[W]here circumstances permit, the trial court should attempt to ascertain the optimum value the pension or retirement benefit has to the parties as a couple, based upon the nature and terms of the plan. The trial court should structure a division which will best preserve the fund and procure the most benefit to each party." *Hoyt* at 183.

**{¶53}** Here, both parties have an OPERS retirement account, at least some portion of which is marital property. Sheila voluntarily retired in November 2017 and

16

began receiving a monthly benefit from her election of a single-life annuity, which ceases upon her death. Joseph is not yet eligible for retirement. The parties presented evidence of the cash-out, or refundable, values of their OPERS accounts. Sheila introduced two letters from OPERS, dated May 16, 2018, which provide that the premarital portion of her account was valued at $51,261.12 (01/01/1987 through 02/29/2000) and the marital portion of her account was valued at $118,403.28 (03/01/2000 through 11/30/2017). Joseph introduced his OPERS 2018 annual statement, which provides that his "refundable account" as of December 31, 2018, was $208,159.89. This statement does not provide a premarital and marital valuation, but it does indicate that Joseph had accumulated 23.75 years of service credit.

**{¶54}** Much discussion was held on the record between counsel and the magistrate as to obtaining an actuarial value of the accounts. The magistrate also suggested that one equitable and less aggravating solution would be if the parties agreed not to divide the accounts. Eventually, the magistrate instructed counsel that either both accounts get valued by a pension evaluator or the parties agree not to value and divide the accounts. At that time, counsel agreed to obtain valuations. Nine months passed between this instruction and the last day of trial. On that last day, it was made apparent that neither party had obtained a valuation of their OPERS account.

**{¶55}** The magistrate concluded "that an equal division of the parties' retirement benefits, by means of an equalization of the present cash out values or present actuarial values, or by the use of division of property orders, would be inequitable." The court adopted the magistrate's recommendation to "award each party's OPERS annuity rights to him or her free from any claim by the other." The reasons given for this outcome are

17

as follows: "the Court cannot ascertain [the present actuarial] values and provide for a current division for cash"; "it would be inequitable to subject both parties' OPERS annuity benefits to division of property orders"; and "dividing the parties' OPERS retirement annuities would keep the parties financially entangled for many years."

{¶56} We agree that the trial court erred in allocating to the parties the entirety of their respective accounts without assigning values to the accounts. Despite the lack of evidence noted by the magistrate, the court still had a duty to value and equitably divide the marital assets. While "the court does have broad discretion to develop some measure of value[, it] is not privileged to omit valuation altogether. A party's failure to put on any evidence does not permit assigning an unknown as value." (Citation omitted.) *Willis,* 19 Ohio App.3d at 48; *see also Weller v. Weller*, 11th Dist. Geauga No. 2004-G-2599, 2005-Ohio-6892, ¶ 34.

{¶57} Due to the trial court's failure to affix a value to the parties' retirement accounts, this court is unable to fully review the trial court's decision regarding the equitable division of marital assets. *See Willis* at 48; *Connolly v. Connolly*, 70 Ohio App.3d 738, 744, 591 N.E.2d 1362 (8th Dist.1990). Thus, this matter will be remanded to the trial court for further proceedings.

{¶58} Sheila's sixth assignment of error has merit.

{¶59} Finally, in his third assigned error, Joseph challenges the trial court's award of attorney fees:

> **[Joseph 3.]** The trial court erred and/or abused its discretion by awarding only $10,000.00 in attorney fees to appellee/cross-appellant.

18

Case No. 2021-G-0005

**{¶60}** "In an action for divorce, * * * a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate." R.C. 3105.73(A).

**{¶61}** "An award of attorney fees is a matter within the sound discretion of the trial court. A decision to not award fees may not be reversed absent a clear abuse of discretion." *Layne v. Layne*, 83 Ohio App.3d 559, 568, 615 N.E.2d 332 (2d Dist.1992), citing *Birath v. Birath*, 53 Ohio App.3d 31, 558 N.E.2d 63 (10th Dist.1988).

**{¶62}** Joseph requested the trial court award him all of his attorney's fees and expenses, which totaled $42,299.80 prior to the last day of trial. The magistrate found that Joseph's attorney is a skilled domestic relations lawyer; that all of her services were reasonably necessary; and that she billed a reasonable rate, even less than she sometimes charges in other cases due to Joseph's income and assets. Accordingly, the magistrate awarded Joseph attorney's fees in the sum of $10,000.00, further finding as follows:

> Throughout the pendency of this case, [Sheila] evinced what can best be described as a cavalier disdain for the legal process and for [Joseph's] rights. She failed to participate in a scheduled mediation, claiming she forgot. She failed to produce documents regarding her assets, which forced [Joseph] to issue a large number of subpoenas for those records. She told [Joseph] that she was going to hide assets from him, and the evidence shows that she tried to do exactly that by obscuring her financial transactions. Her conduct made it inordinately difficult for [Joseph] to determine the nature, extent, and value of marital assets.

19

{¶63} Joseph contends it was an abuse of discretion to award him only $10,000.00 after finding the total of his attorney's fees were reasonable and necessary, and that the total of attorney's fees was "overwhelming related to [Sheila's] contemptuous behavior, financial misconduct, and total disdain for the legal system." Sheila does not respond to this argument on appeal. However, considering the parties' assets and income, we conclude the court's decision to make a partial award of Joseph's attorney fees was not a clear abuse of discretion.

{¶64} Joseph's third assignment of error is without merit.

{¶65} The judgment of the Geauga County Court of Common Pleas is affirmed in part and reversed in part. Pursuant to our discussion under Joseph's second assigned error and Sheila's sixth assigned error, this matter is remanded to the trial court for further proceedings consistent with this opinion.

CYNTHIA WESTCOTT RICE, J.,

JOHN J. EKLUND, J.,

concur.