[Cite as *Gantous v. Basing*, 2024-Ohio-1112.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## GEAUGA COUNTY

JOSEPH D. GANTOUS,

     Plaintiff-Appellee,

- vs -

SHEILA M. BASING,

     Defendant-Appellant.

CASE NO. 2023-G-0029

Civil Appeal from the
Court of Common Pleas

Trial Court No. 2018 DC 000017

**O P I N I O N**

Decided: March 25, 2024
Judgment: Affirmed

*Annette C. Trivelli*, 9801 Bright Water Drive, Englewood, FL 34223 (For Plaintiff-Appellee).

*Frank R. Brancatelli*, 7318 Gallant Way, Painesville, OH 44077 (For Defendant-Appellant).

MARY JANE TRAPP, J.

{¶1} The instant appeal arises from a hearing following our remand in *Gantous v. Basing*, 11th Dist. Geauga No. 2021-G-0005, 2022-Ohio-3001 ("*Gantous I*"), for the trial court to determine the character division of the parties' real estate located at 22400 Seabrooke Avenue, Euclid, Ohio 44123 (the "Seabrooke residence"), which we determined was marital property; the marital interest in the parties' respective OPERS (Ohio Public Employee Retirement System) accounts; and the equitable division of the marital property between the parties.

{¶2} Appellant, Sheila M. Basing ("Ms. Basing"), raises three assignments of error, contending the trial court erred by (1) failing to find she paid an $11,812.59 lien on the Seabrooke residence, which should have been deducted from the marital equity of the home before dividing it equally between the parties; (2) awarding appellee, Joseph D. Gantous ("Mr. Gantous") 50% of her OPERS retirement account because her income was $18,000 per year less than his income before she retired; and (3) failing to consider R.C. 3105.171(F) in making a distributive award, specifically as to equitably dividing the marital portion of the parties' OPERS accounts by an in-kind 50%-50% division pursuant to a division of property order ("DOPO"), R.C. 3105.80 et. seq.

{¶3} After a careful review of the record and the pertinent law, we find Ms. Basing's assignments of error are without merit.

{¶4} Firstly, Ms. Basing incurred during the marriage and made payments on a secured debt on the Seabrooke residence for her own use; thus, it was her sole obligation and should not be relevant to a consideration of the division of the marital equity in the Seabrooke home.

{¶5} Secondly and thirdly, our review of the 2020 magistrate's decision following the divorce trial and the magistrate's decision following our remand in *Gantous I* reveals the trial court set forth and applied the factors of R.C. 3105.171(F) in fashioning an equitable award of the parties' marital interest in their respective OPERS accounts. The trial court was concerned with the disparity in the parties' accounts, their largest assets, and we cannot find the trial court abused its discretion in equalizing them by an in-kind 50%-50% distribution. While Ms. Basing's account is already in pay status and her

2

income was less than Mr. Gantous, she was similarly awarded 50% of the marital interest in Mr. Gantous' account.

{¶6} The judgment of the Geauga County Court of Common Pleas is affirmed.

**Substantive and Procedural History**

{¶7} The parties were married in 2000 and have two children together. Ms. Basing has a child from a previous marriage. The parties used the Seabrooke residence as their marital residence until 2007.

{¶8} In 2018, Mr. Gantous filed for a divorce.

{¶9} After the initial divorce trial in July 2020, the magistrate issued a decision, which the trial court adopted after overruling the parties' objections, except for the termination date of the marriage. The court found the value of the marital assets assigned to each party was $65,150 to Mr. Gantous and $126,696 to Ms. Basing. To equalize the award, the court ordered Ms. Basing to transfer her Huntington National Bank investment account (or the amount of $18,108) to Mr. Gantous, and to pay Mr. Gantous a distributive award in the amount of $30,773. The court further ordered that each party retain his or her own OPERS account free from any claim by the other, that neither party is entitled to spousal support, and that Ms. Basing pay $10,000 in attorney fees to Mr. Gantous. The trial court found the termination date of the marriage was March 10, 2020. Both parties appealed.

{¶10} In *Gantous I*, we found the court's finding that the Seabrooke residence was Ms. Basing's separate property was against the manifest weight of the evidence and that the entire amount of equity in the home was marital property. *Id.* at ¶ 39. More specifically, we determined that although she owned the home prior to the parties'

3

marriage, Ms. Basing failed to meet her burden of tracing her separate property, "i.e., the loan proceeds used for improvements, the marital funds used to pay off the loan, and the parties' own labor—destroyed its identity as separate property." *Id.* at ¶ 38.

{¶11} We also determined we were unable to fully review the trial court's decision regarding the equitable division of marital assets because the trial court failed to affix a value to the parties' retirement accounts. *Id.* at ¶ 57. The magistrate had instructed the parties prior to the divorce trial to either have both accounts valued by a pension evaluator or agree not to value the accounts and divide them. *Id.* at ¶ 54. At that time, counsel agreed to obtain valuations; however, nine months later and on the last day of trial, it was made apparent that neither party had their account valued. *Id.*

{¶12} Ultimately, the trial court gave each party the right to their own account, free from any claim by the other, reasoning it could not ascertain the present actuarial values and provide a current division of cash; it would be inequitable to subject both parties' OPERS accounts to division of property orders; and dividing the accounts would keep the parties financially entangled for years. *Id.* at ¶ 55. We determined that despite the lack of evidence, the court still had a duty to value and equitably divide the marital assets and could not omit a valuation altogether. *Id.* at ¶ 56.

{¶13} In March 2023, pursuant to our remand, the magistrate conducted an evidentiary hearing. Mr. Gantous presented the testimony of Ms. Basing, as if on cross-examination; himself; and his counsel (for attorney fees only). Ms. Basing testified on direct examination during Mr. Gantous' case in chief. In addition, as relevant, both parties submitted valuation reports on the OPERS accounts as evidentiary exhibits.

4

**The Magistrate's Decision**

{¶14}  The magistrate issued findings of fact and conclusions of law, determining, in relevant part, the following:

{¶15}  (1) At the divorce hearing, the parties stipulated that the value of the Seabrooke residence was $70,000.  Following our instructions on remand, the magistrate found the marital interest is $70,000 plus any appreciation.  Further, the Seabrooke residence should be sold and the net proceeds equally divided.

{¶16}  (2) The magistrate found the martial interest in Mr. Gantous' OPERS account is $212,147.83.  Ms. Basing chose early retirement and retired in 2017 at the age of 55.  The present value of the marital interest in her account is $366,161.73.  Finding the marital portion of each of the parties' respective OPERS accounts should be equitably divided pursuant to R.C. 3105.171, the magistrate presented two alternatives.

{¶17}  The first was an equalizing cash payment of $77,007.15 from Ms. Basing to Mr. Gantous.  However, the magistrate noted there was "insufficient present income, monies or other assets in the name or possession of" Ms. Basing to effectuate such a payment.

{¶18}  The second alternative, which the trial court adopted, was to equitably divide in kind (50%-50% between the parties) the marital interest in the parties' OPERS accounts pursuant to a DOPO using a marriage termination date of March 10, 2020.  Because Ms. Basing is already receiving benefits, she is required to pay Mr. Gantous $54,007.34, representing 50% of the monthly benefits she has received from the termination date of the marriage, March 10, 2020, to the date of the court's final judgment entry adopting the magistrate's decision, June 30, 2023.  This payment will be made in

5

monthly installments of $1,000 by an automatic bank transfer. Ms. Basing will also be required to pay Mr. Gantous 50% of any monthly benefits she receives after June 30, 2023. Both parties are entitled to procure and maintain a term life insurance policy due to the risk of losing his or her entitlement to the other's benefits should he or she predecease the other.

{¶19} (3) Not including the Seabrooke residence and the marital interest in the parties' respective OPERS accounts, the total value of the marital assets determined at trial was $101,601. To equalize the division of assets and debts, Ms. Basing is required to pay Mr. Gantous two payments from her 50% share of the sale of the Seabrooke residence: (1) $18,000, representing the Huntington National Bank investment account that was ordered in the original judgment entry for divorce, and (2) $18,225.50, an additional equalizing cash payment.

### Ms. Basing's Objections and The Trial Court's Judgment

#### *The Seabrooke Residence*

{¶20} Ms. Basing objected to an equal division of the proceeds from the Seabrooke residence, contending she should be first reimbursed $11,812.50 from the net proceeds of the sale because she paid off an equity loan to Dollar Bank against the property in this sum. At the time of the divorce trial, Ms. Basing was still paying off the loan. She submitted a monthly loan statement from Dollar Bank as an evidentiary exhibit, labeled "Exhibit T." Ms. Basing contended that this exhibit was not considered during the divorce hearing or on appeal by this court in *Gantous I*.

6

Case No. 2023-G-0029

{¶21} A review of the July 2020 magistrate's decision following the divorce hearing reveals the magistrate noted there was a "modest balance of this line of credit" that remained outstanding.

{¶22} A review of the docket in *Gantous I* reveals that while the appeal was pending, this court filed a judgment entry noting that some of the exhibits offered at trial were not included in the record on appeal. We gave the parties 15 days to supplement the record with anything material that had been omitted. While neither party responded, the trial court supplemented the record and provided this court with the omitted exhibits, including Exhibit T.

{¶23} The trial court overruled Ms. Basing's objection, noting she failed to present any evidence at the evidentiary hearing of her alleged payment of the loan, "merely confirming that no present lien existed on the property." The trial court reviewed that in her previous objections to the 2020 magistrate's decision, Ms. Basing had argued the equity lines of credit against the Seabrooke residence were "taken out solely by Defendant [Basing] and entirely paid back by Defendant [Basing]."

{¶24} The trial court found that "it is irrelevant that [Ms. Basing] borrowed against the property herself and/or paid off the Dollar Bank loan as she has alleged, whether she did so during the marriage or after the parties' last date of trial on March 10, 2020," and that "the net proceeds of the sale of the Seabrooke residence be equally divided between the parties, irrespective of any line of credit obtained or paid by [Ms.] Basing."

### Martial Interest in the Parties' Retirement Accounts

{¶25} Ms. Basing also objected to the magistrate's division of the parties' OPERS accounts. She argued the magistrate failed to consider the parties' assets and liabilities,

7

Case No. 2023-G-0029

the liquidity of the property, and the economic desirability of retaining an intact asset or interest in an asset. She further argued the magistrate's division of the parties' OPERS accounts is punitive because Mr. Gantous is still working.

{¶26} The trial court overruled Ms. Basing's objection, finding her arguments ignored the gross disparity in the value of the parties' respective accounts and the bases for an in-kind division. Further, the division Ms. Basing was proposing, i.e., that each party retain their respective OPERS account, is the division she appealed in *Gantous I*. The trial court concluded that "an in-kind division of the marital portion of both retirement accounts between the parties is appropriate and equitable."

### *Equitable Division of Property*

{¶27} Lastly, Ms. Basing argued that an equitable division of the parties' marital property pursuant to the factors set forth in R.C. 3105.171(F) should be: (1) each party separately retain their OPERS account; (2) Ms. Basing should transfer the $18,108 Huntington Bank Investment Account to Mr. Gantous per the original divorce decree; (3) Mr. Gantous' marital interest in the Seabrooke residence should be $29,093.35; and (4) Ms. Basing should pay Mr. Gantous $34,731 as an equalizing payment.

{¶28} The trial court overruled Ms. Basing's objection, finding her proposal was "obviously inappropriate under any analysis or application of R.C. 3105.171, which requires an equitable division of all marital assets."

{¶29} After overruling Ms. Basing's objections, the trial court adopted the magistrate's findings of fact and conclusions of law.

{¶30} Ms. Basing raises three assignments of error on appeal:

8

{¶31} "[1.] The trial court erred to the prejudice of the defendant-appellant, Sheila M. Basing when it failed to find that there existed a lien on the Seabrook[e] (Exhibit T) in the original trial in this matter in the sum of $11,812.59 and acknowledged [she] paid off three (3) years lat[]er with a stipulated value of $70,000 at the time of the divorce.

{¶32} "[2.] The trial court erred to the prejudice of the defendant-appellant, Sheila M. Basing when it awarded defendant-appellee 50% of her OPERS effective March 11, 2020 even though her income was $18,000 per year less than plaintiff-appellee.

{¶33} "[3.] The trial court erred to the prejudice of the defendant-appellant, Sheila M. Basing when it failed to take into consideration the provisions of Ohio Revised Code §3105.171 in making a distributive award."

**Standard of Review**

{¶34} In her three assignments of error, Ms. Basing argues the trial court's award of marital property, i.e., the Seabrooke residence, the parties' respective OPERS accounts, and the distributive award in favor of Mr. Gantous to equalize the distribution of the parties' marital property, is inequitable.

{¶35} Trial courts have broad discretion in deciding appropriate property awards in divorce cases. *Speece v. Speece*, 2021-Ohio-170, 167 N.E.3d 1, ¶ 18 (11th Dist.). "However, a trial court's discretion is not unbridled. The award need not be equal, but it must be equitable. A reviewing court will not substitute its judgment for that of the trial court unless the trial court abused its discretion." *Id.*, quoting *Bisker v. Bisker*, 69 Ohio St.3d 608, 609, 635 N.E.2d 308 (1994). An abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist.

9

Case No. 2023-G-0029

Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting *Black's Law Dictionary* 11 (8th Ed.2004).

**{¶36}** "'"When applying this standard of review, we must view the property division in its entirety, consider the totality of the circumstances, and determine whether the trial court abused its discretion when dividing the spouses' marital assets and debts."'" *Speece* at ¶ 19, quoting *Calkins v. Calkins*, 2016-Ohio-1297, 62 N.E.3d 686, ¶ 22 (11th Dist.), quoting *Baker v. Baker*, 4th Dist. Washington No. 07CA24, 2007-Ohio-7172, ¶ 28. "'In determining whether the trial court has abused its discretion, a reviewing court is not to weigh the evidence, but, rather, must determine from the record whether there is some competent, credible evidence to sustain the findings of the trial court.'" *Id.*, quoting *Habo v. Khattab*, 11th Dist. Portage No. 2012-P-0117, 2013-Ohio-5809, ¶ 55.

**{¶37}** "[A] potentially equal division is to be the starting point in determining an equitable distribution of property." *Cherry v. Cherry*, 66 Ohio St.2d 348, 421 N.E.2d 1293 (1981), paragraph one of the syllabus. "'The equitable division of marital property necessarily implies the equitable division of marital debt.'" *Speece* at ¶ 20, quoting *Longo v. Longo*, 11th Dist. Geauga No. 2004-G-2556, 2005-Ohio-2069, ¶ 109, citing R.C. 3105.171(F)(2). As this court has observed, "'equality of distribution, while a goal in many situations, must yield to concerns for equity.'" *Id.*, quoting *Longo* at ¶ 111.

**{¶38}** "If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable. In making a division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of this section." R.C. 3105.171(C)(1). The division (F) factors are as follows:

10

{¶39} "(1) The duration of the marriage;

{¶40} "(2) The assets and liabilities of the spouses;

{¶41} "(3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;

{¶42} "(4) The liquidity of the property to be distributed;

{¶43} "(5) The economic desirability of retaining intact an asset or an interest in an asset;

{¶44} "(6) The tax consequences of the property division upon the respective awards to be made to each spouse;

{¶45} "(7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;

{¶46} "(8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;

{¶47} "(9) Any retirement benefits of the spouses, excluding the social security benefits of a spouse except as may be relevant for purposes of dividing a public pension;

{¶48} "(10) Any other factor that the court expressly finds to be relevant and equitable."

**Seabrooke Residence**

{¶49} In her first assignment of error, Ms. Basing contends the trial court failed to account for an $11,812.59 lien that existed on the Seabrooke residence during the original divorce trial, which she paid, and that neither the trial court during the divorce trial nor this court on appeal in *Gantous I* considered Exhibit T. She further contends the lien should

11

Case No. 2023-G-0029

have been deducted before dividing the marital equity in the home ($70,000 - $11,812.40 = $58,187.50 divided by 2 = $ 29,093.35).

**{¶50}** A review of the July 2020 magistrate's decision reveals the magistrate determined a "modest balance" remained on an existing credit line. Similarly, our review of the docket in *Gantous I* reveals Exhibit T was expressly included in the record and our consideration on appeal. Thus, it appears Exhibit T was considered by both courts. At the evidentiary hearing after remand, Ms. Basing submitted no evidence or testimony that the lien was a marital debt and should be deducted from the marital interest in the home before equally dividing the proceeds of the sale of the Seabrooke residence. Her statements in her objections to the 2020 magistrate's decision were quite to the contrary, informing the court she took out the line of credit by herself and repaid it herself.

**{¶51}** We agree with the trial court that a loan billing statement on an equity line Ms. Basing took out for personal use and repaid herself is not relevant in the determination of the marital equity of the home. *See*, *e.g.*, *Schaefer v. Schaefer*, 5th Dist. Stark No. 2007CA00283, 2008-Ohio-3960, ¶ 39 (husband's additional line of credit on home equity loan to meet his financial obligations was his separate obligation); *Sharp v. Sharp*, 9th Dist. Wayne Nos. 21AP0007 and 21AP0019, 2022-Ohio-1201, ¶ 37 (portion of home equity line that was used to purchase wife's truck was equitably set off by awarding husband certain tools).

**{¶52}** Ms. Basing's first assignment of error is without merit.

### Equitable Division of the Parties' OPERS Retirement Accounts

**{¶53}** Since Ms. Basing's last two assignments of error concern the equitable division of the parties' OPERS accounts, we will address them together. In Ms. Basing's

12

second assignment of error, she contends the trial court erred by awarding Mr. Gantous 50% of her OPERS account from the termination date of the marriage even though her income was $18,000 per year less than Mr. Gantous' income. In her third assignment of error, Ms. Basing contends the trial court failed to consider the factors in R.C. 3105.171(F) when dividing the parties' respective OPERS accounts.

{¶54} When presented with a pension or retirement fund, the trial court is charged with the goal of preserving the asset so that each party can procure the most benefit. *Hoyt v. Hoyt*, 53 Ohio St.3d 177, 181, 559 N.E.2d 1292 (1990). A trial court has broad discretion in formulating an equitable distribution of marital property. *Berish v. Berish*, 69 Ohio St.2d 318, 319, 432 N.E.2d 183 (1982).

{¶55} While the trial court has broad discretion, it must make written findings of fact to support its determination that the marital property has been equitably divided. *Gupta v. Sharan*, 10th Dist. Franklin No. 22AP-81, 2022-Ohio-4479, ¶ 77; R.C. 3105.171(G). R.C. 3105.171(G) requires that "[i]n any order for the division * * * of property * * * made pursuant to this section, the court shall make written findings of fact that support the determination that the marital property has been equitably divided * * *."

{¶56} Pursuant to R.C. 3105.171(C), when dividing marital property, the trial court must consider all relevant factors, including those outlined in R.C. 3105.171(F). *Gupta* at ¶ 78. While the trial court need not itemize every factor set forth in R.C. 3105.171(F), the court's decision must clearly indicate that the factors were considered before the property division was made. *Id.*

{¶57} A review of the magistrate's decision following the divorce hearing reveals the magistrate specifically set forth and applied the factors of R.C. 3105.171(F); however,

13

because the parties failed to follow the court's order to submit valuations of their respective OPERS accounts, the magistrate found it was inequitable to divide the accounts. The magistrate noted that "[it] is possible that if the parties had engaged a retirement benefits consulting firm * * *[,] the consultants could have offered other suggestions for an equitable division of these assets, and the Court could have considered those alternatives in deciding how to divide all the parties' assets."

{¶58} We remanded in *Gantous I* because the trial court must affix some value to an asset despite the parties' failure to put forth any evidence. *Id.* at ¶ 54-57.

{¶59} On remand, the parties submitted valuation reports of the OPERS accounts. A review of the magistrate's findings of fact and conclusions of law reveals the magistrate reviewed that Ms. Basing's OPERS account is in pay status and Mr. Gantous remains employed and contributes to his OPERS account. The magistrate disagreed with Mr. Gantous' argument that the valuation of the parties' respective OPERS accounts should be the date of Ms. Basing's retirement, October 30, 2017. The marriage termination date of March 11, 2020, is appropriate because while Ms. Basing may have elected to retire, Mr. Gantous chose to remain married to Ms. Basing, to continue to be employed, and to contribute to his OPERS account until he filed his complaint for divorce on January 8, 2018.

{¶60} The magistrate further found it was required pursuant to R.C. 3105.171 to equitably divide both retirement accounts (Mr. Gantous, $212,147.83, and Ms. Basing, $366,161.73). The court reviewed that the parties have insufficient present income, monies, or other assets for an equalizing payment, and that an in-kind division pursuant to a DOPO and R.C. 3105.80 et. seq. was more efficient, equitable, and appropriate.

14

Thus, contrary to Ms. Basing's contention, the trial court considered the factors of R.C. 3105.171(F) both before and after our remand in *Gantous I*.

**{¶61}** While Ms. Basing argues the trial court should have allocated each party the entirety of their separate accounts, she appealed the court's initial award of such in *Gantous I*, raising the trial court's failure to consider the valuation of the parties' OPERS accounts as her sixth assignment of error. *Id.* at ¶ 48.

**{¶62}** After the evidentiary hearing on remand, the trial court stated its concern about the disparity in the the parties' accounts. We cannot find the trial court abused its discretion in equalizing the parties' accounts, their largest assets, by an in-kind 50%-50% distribution. While Ms. Basing's OPERS account is already in pay status and her income was less than Mr. Gantous, she was similarly awarded 50% of Mr. Gantous' marital interest in his OPERS account.

**{¶63}** We recognize that courts "should attempt to disentangle the parties' economic partnership so as to create a conclusion and finality to their marriage" and that "trial courts, when circumstances permit, should strive to resolve the issues between the parties so as to disassociate the parties from one another or at least minimize their economic partnership." *Hoyt* at 179, 182. But "the trial court must [also] obtain a result which will preserve the asset so that each party can procure the most benefit." *Id.* at 181.

**{¶64}** Ms. Basing's second and third assignments of error are without merit.

**{¶65}** The judgment of the Geauga County Court of Common Pleas is affirmed.

MATT LYNCH, J.,

JOHN J. EKLUND, J.,

concur.

15

Case No. 2023-G-0029