[Cite as *Coxon v. Coxon*, 2025-Ohio-2395.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## ASHTABULA COUNTY

| | |
|---|---|
| KIMBERLY COXON, | CASE NO. 2024-A-0064 |
| Plaintiff-Appellee/<br>Cross-Appellant, | Civil Appeal from the<br>Court of Common Pleas |
| - vs - | |
| JEFFREY COXON, | Trial Court No. 2021 DR 00445 |
| Defendant-Appellant/<br>Cross-Appellee. | |

## OPINION AND JUDGMENT ENTRY

Decided: July 7, 2025
Judgment: Affirmed in part, reversed in part, and remanded

*Adam J. Thurman* and *Erik B. Quattro*, Thurman Baron, LLC, 4212 West Streetsboro Road, Richfield, OH 44286 (For Plaintiff-Appellee/Cross Appellant).

*Mark A. Ziccarelli*, 8754 Mentor Avenue, Mentor, OH 44060 (For Defendant-Appellant/Cross-Appellee).

ROBERT J. PATTON, P.J.

{¶1} Appellant-cross appellee, Jeffrey Coxon ("Husband"), and appellee-cross appellant, Kimberly Coxon ("Wife"), appeal the decision of the Ashtabula County Court of Common Pleas granting their divorce and dividing and distributing the parties' marital assets. For the following reasons, we affirm in part and reverse in part.

{¶2} This appeal arises from a judgment entry of divorce, filed on June 27, 2024, granting the divorce of Husband and Wife. Wife filed for divorce on July 7, 2020, in Case No. 2020 DR 00255 (the "first divorce case"). Husband counterclaimed for divorce. The

case was dismissed on December 7, 2021, when neither party appeared at trial. The next day, December 8, 2021, Wife filed a second complaint for divorce, in Case No. 2021 DR 00445 (the "second divorce case"). The final judgment entry granting divorce in the second divorce case was filed on June 27, 2024, to which the parties now appeal. Husband filed his appeal on July 26, 2024, and Wife filed her cross appeal on August 2, 2024.

{¶3}    The second divorce case was set for trial on March 9, 2023, before the magistrate. One witness testified, a real estate appraiser, Scott Hivnor ("Hivnor"). After Hivnor's testimony was complete, the Magistrate realized that she knew Wife personally and was familiar with Husband. Wife's counsel filed a motion for recusal. Subsequently all the Judges of the Ashtabula County Court of Common Pleas recused themselves, and the case was transferred to an appointed visiting judge. The trial was rescheduled and later held on November 6th, 7th, and 9th, and December 5, 2023.

{¶4}    Our review of the record revealed the following facts:

{¶5}    Husband and Wife were married on September 24, 1994, and have two adult children together, a son and a daughter. Husband worked as an attorney throughout the entirety of the marriage, while Wife worked for certain periods of time throughout the marriage. There were extended periods of unemployment during the marriage where Wife devoted her time to caring for the couple's children and home. Husband and Wife's son was diagnosed with Asperger's Syndrome in 2007, requiring a demanding schedule for his care. Wife assumed those demands while Husband supported the family financially. Wife worked as a registered nurse in the early years of the marriage, until the demands of the children's care prompted her to stay home. Wife attained two postgraduate masters

Case No. 2024-A-0064

degrees during the course of the marriage. In November 2020, after the first divorce was filed, Wife obtained full time employment making approximately $90,000 a year. Around 1997, Husband began working at the law firm, Warren and Young. Approximately a year after working for Warren and Young, Husband became a partner at the law firm. The partnership resulted in Husband's accumulation of assets. Husband gained interest in the property that housed the business, a yearly salary, and bonuses. In 2022 Warren and Young dissolved and Husband became employed as general counsel for one of the former law firm's biggest clients, Molded Fiber Glass, Inc. ("MFG"). During his last years at Warren and Young, Husband's yearly income was more than $300,000 per year. At the date of trial Husband was no longer employed at the law firm, and Husband's salary at MFG was over $200,000 per year plus additional bonuses.

{¶6} Husband moved out of the marital residence on January 7, 2019, approximately 18 months prior to the filing of the complaint in the first divorce case. Husband left the home at Wife's request and resided with his parents. Husband returned to the home occasionally to access equipment housed in the barn. Wife remained in the home with the couple's daughter. Wife moved out of the home in December of 2020, and moved in with a relative. At that point Husband moved back into the home.

{¶7} After the separation, the parties made one attempt at reconciliation by attending a single meeting with a marriage counselor. The attempt was unsuccessful. The parties attended some of the children's sporting events together and took trips together with their children after the separation but testified that it was only one or two and that the parties remained separate during those trips. No conjugal relations occurred between the parties once they separated.

Case No. 2024-A-0064

{¶8}   After the parties separated in January of 2019, Wife opened two bank accounts with Huntington Bank in her name. Wife withdrew $25,000 from one of the parties' joint accounts and deposited it into one of her separate accounts. Wife later withdrew an additional $9,000 from another joint account and deposited it in another separate account.

{¶9}   Prior to trial, Wife's counsel discovered that Husband had two Andover Bank accounts that were not disclosed on the financial disclosure affidavits he submitted at the outset of the case. Counsel made this discovery while investigating the dissolution of Husband's law firm, Warren and Young. Husband testified that the distributions received from the dissolution of Warren and Young, concluding in 2022, and the salary he received from new employer, MFG, were deposited into the accounts. The accounts reached a high of more than $880,000. Husband earned interest on these accounts. It was further discovered that Husband had undisclosed shares of stock.

{¶10}  Husband testified that he continued to pay all of the expenses that he paid during the marriage until a temporary order was put into place during the first divorce case. At that point, Husband began paying spousal support and child support to Wife. In June 2022, in the second divorce case, an agreed magistrate's order was filed requiring Husband to pay $4,000 in temporary spousal support and $500 in temporary child support. Husband's temporary support order was calculated using the disclosed earnings figure of $286,333 that he provided in his affidavit. The disclosed earnings did not include any of the income Husband received and deposited into the Andover Bank accounts.

Case No. 2024-A-0064

{¶11} The parties testified at trial as to their assets. The parties owned their marital home, located on Stevens Road in Ashtabula, and an adjacent parcel of vacant land located on Creamer Road in Ashtabula.

{¶12} Husband testified to owning interest in several businesses. Husband indicated that he was the sole owner of 577 Broad Street Holdings, he owned a 17% interest in Capital Recovery Associates, LLC, a 35% interest in BTC Partners, LLC, and a 47% interest in 134 W. 46th Street Holding Company. According to Husband, he had a 50% ownership interest in the law firm Warren and Young, prior to its dissolution in 2022.

{¶13} The parties testified to their individual retirement accounts. At the date of trial, Wife possessed a University Hospital 403(b) Plan, an ACMC 403(b) Plan, a Capital Group Simple IRA, and a Huntington Bank IRA. Husband possessed a Molded Fiber Glass 401(k) account, and a Huntington Bank IRA account.

{¶14} The parties agreed that during the marriage Husband opened two 529 brokerage accounts with Wells Fargo and Black Rock that was intended to fund the children's education.

{¶15} The parties said that they had a joint checking account with Huntington Bank, in addition to their individual accounts, that they each owned used vehicles in their own names, and together they owned a 1999 Sea Ray 370 Sundance. A joint personal property appraisal was completed by Scott Mihalic on March 3, 2023, concluding that the parties' personal property was valued at $207,850.

{¶16} In its judgment entry of divorce, the trial court determined that a "de facto" termination date of the marriage applied, and found that the marriage terminated on July 9, 2020, two days after the filing of the first divorce. The trial court then divided the parties'

assets using the date of July 9, 2020, as the marriage termination date, concluding that assets accumulated during the marriage up to that date were deemed marital property. The trial court further determined that Husband's nondisclosure of the money held in the Andover Bank accounts constituted misconduct, allowing the court to award some of the post-July 9, 2020 assets to Wife. Based on these findings, the trial court awarded the following and divided the property as detailed below:

{¶17} To Wife, spousal support in the sum of $4,000 per month for a total of 72 months;

{¶18} 50% of the income shown on Husband's tax returns received from Warren and Young, after deducting Husband's disclosed earnings of $286,333, for 2019 and half of 2020, equaling $108,796;

{¶19} $350,000, an additional sum to compensate Wife for her contribution to Husband's career from Husband's nonmarital property;

{¶20} A $130,250 payment representing 50% of the value of the marital residence and property located on Creamer Road to be retained by Husband, minus the outstanding home equity line of credit, in exchange for Wife's interest in the property;

{¶21} $134,280.50 representing 50% of the value of Husband's Andover Bank accounts of $377,357 as of July 2020, minus the $108,796 amount already awarded for Husband's failure to disclose the accounts;

{¶22} 735 shares of stock were awarded to Husband at $17.50 per share value; the additional 600 shares were deemed Husband's separate property;

{¶23} To Wife, 50% of the marital portion of Husband's retirement benefit plans and retirement accounts;

{¶24} To Wife, $103,925 that the parties stipulated would be paid to Wife for the value of the parties personal property;

{¶25} To Wife, $32,500 representing half of the value of the 1999 Sea Ray 370 Sundance.

{¶26} To Husband, the trial court ordered that he receive 50% of the marital portion of Wife's retirement benefit plans;

{¶27} $36,971 of marital assets in the Wells Fargo account as of July 2020 to be retained by Husband.

{¶28} Both parties now timely appeal.

### Assignments of Error

{¶29} Husband asserts the following assignments of error:

{¶30} [1.] "The trial court erred when it awarded [Wife] additional monies from [Husband's] earnings as a distributive award for financial misconduct. (JE p. 6)"

{¶31} [2.] "The trial court erred when it awarded [Wife] $350,000.00 from non-marital funds to compensate [Wife] for her contribution to [Husband's] career. (JE p. 8)"

{¶32} [3.] "The trial court erred in valuing the marital property and dividing the equity by using an improper date for the home equity loan. (JE p. 8-9)"

{¶33} [4.] "The trial court erred when it determined the marital portion of 134 West 46th Street Holdings, LLC to be $115,900.00. (JE p.10[)]"

{¶34} Wife asserts the following assignments of error:

{¶35} [1.] "The trial court erred and abused its discretion when it found that the parties were divorced in 2020. (June 27, 2024, Judgment Entry of Divorce, P.5)"

{¶36} [2.] "The trial court erred and abused its discretion when it failed to divide the [Husband's] business interests and the Andover stock. (June 27, 2024, Judgment Entry of Divorce, P.9)"

{¶37} [3.] "The trial court erred and abused its discretion when it determined that [Husband's] spousal support obligation should terminate after seventy-two months. (June 27, 2024, Judgment Entry of Divorce, P. 4-5)"

**Standard of Review**

{¶38} A trial court reviews property awards and division under an abuse of discretion standard. "Trial courts have broad discretion in deciding appropriate property awards in divorce cases." *Gantous v. Basing*, 2024-Ohio-1112, ¶ 35, quoting *Speece v. Speece*, 2021-Ohio-170, 167 N.E.3d 1, ¶ 18 (11th Dist.). "'However, a trial court's discretion is not unbridled. The award need not be equal, but it must be equitable. A reviewing court will not substitute its judgment for that of the trial court unless the trial court abused its discretion.' *Id.*, quoting *Bisker v. Bisker*, 69 Ohio St.3d 608, 609, 635 N.E.2d 308 (1994). An abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting *Black's Law Dictionary* 11 (8th Ed.2004)." *Id.*

{¶39} When applying the standard of review an appellate court must review the property division in its entirety and consider the totality of the circumstances when determining if the trial court abused its discretion when dividing and distributing the marital assets. *Id.*, quoting *Speece* at ¶ 19, quoting *Calkins v. Calkins*, 2016-Ohio-1297, ¶ 22, (11th Dist.), quoting *Baker v. Baker*, 2007-Ohio-7172, ¶ 28 (4th Dist.). """In determining whether the trial court has abused its discretion, a reviewing court is not to weigh the

Case No. 2024-A-0064

evidence, but, rather, must determine from the record whether there is some competent, credible evidence to sustain the findings of the trial court."' [*Speece*] at ¶ 36, quoting *Habo v. Khattab*, 11th Dist. Portage No. 2012-P-0117, 2013-Ohio-5809, ¶ 55." *Id.* at ¶ 36.

**Husband's First Assignment of Error**

**{¶40}** In Husband's first assignment of error, he contends that the trial court erred by improperly awarding Wife money from Husband's earnings as a distributive award for financial misconduct and then rationalizing the award on different grounds.

**{¶41}** R.C. 3105.171 governs the division of assets in a divorce case. A "distributive award" is defined in R.C. 3105.171(A)(1):

> "Distributive award" means any payment or payments, in real or personal property, that are payable in lump sum or over time, in fixed amounts, that are made from separate property or income, and that are not made from marital property and do not constitute payments of spousal support . . . .

**{¶42}** Husband avers that the trial court made its determination to award $108,796 to Wife as a distributive award. However, our review of the record indicates that this was a division of marital assets, not an award distributed from separate property, despite the trial court's references to Husband's misconduct. To constitute a distributive award, the award must come from separate property or income of the other party. R.C. 3105.171(A)(1).

**{¶43}** The trial court determined the de facto duration of the marriage was from the date of marriage, September 24, 1994, until July 9, 2020. Income earned from Husband's business, Warren and Young during the marriage was deemed marital property. There is no dispute between the parties that Husband intentionally failed to disclose on his financial affidavits his Andover Bank accounts where the final years of

Case No. 2024-A-0064

Husband's income from Warren and Young were deposited, along with earnings from his new employer, MFG. Accordingly, the trial court determined that:

> The amount owed Plaintiff is 50% of the income shown on the parties' tax returns received by Defendant from Warren and Young, after deducting the Defendant's disclosed support earnings (of $286,333). This applies to 2019 income of $422,879, and equals $68,273. It also applies to one-half of 2020 income, and equals $40,523, a total of $108,796 owed to Plaintiff.

{¶44} The trial court explained that this income was not initially disclosed to the trial court when Husband completed his financial disclosure affidavit which is used to determine a temporary support amount. The distribution to Wife was not a distributive award for Husband's financial misconduct. Instead, the trial court took note of the fact that prior to Wife's counsel discovering the nondisclosure, the trial court might never have known the income existed. The trial court described this division of Husband's earnings as a division of marital property to which Wife was entitled. As such, the trial court awarded Wife half of the earnings from Warren and Young that Husband attempted to conceal.

{¶45} The trial court properly divided the earnings Husband failed to disclose that were marital property based on the de facto date of the termination of parties' marriage. Accordingly, Husband's first assignment of error is without merit.

**Husband's Second Assignment of Error**

{¶46} In Husband's second assignment of error, he contends that the trial court erred when it awarded Wife $350,000 from his separate income to fund Wife's contribution to his career.

Case No. 2024-A-0064

{¶47} R.C. 3105.171 further explains when a distributive award may be made: "The court may make a distributive award to facilitate, effectuate, or supplement a division of marital property . . . ." R.C. 3105.171 (E)(1).

{¶48} The trial court stated its reasons for making the $350,000 award:

> Plaintiff spent many years tending to her family duties of raising two children and supporting her successful husband's career as a lawyer. It would not be equitable to fail to recognize Plaintiff's contribution to the success of Defendant's Career at the expense of her own. . . .
>
> The Court finds it equitable to award Plaintiff a sum from Defendant's non-marital property in addition to the $108,879.00 ordered in marital funds. This is to compensate Plaintiff for her contribution to Defendant's career. The equitable amount awarded, and which Defendant is ORDERED to pay to Plaintiff within 60 days after filing of this Order, is $350,000.00.

{¶49} R.C. 3105.171(F) requires that when the trial court makes a distributive award, it must consider ten factors:

> (F) In making a division of marital property and in determining whether to make the amount of any distributive award under this section, the court shall consider all of the following factors:
>
> (1) The duration of the marriage;
>
> (2) The assets and liabilities of the spouses;
>
> (3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;
>
> (4) The liquidity of the property to be distributed;
>
> (5) The economic desirability of retaining intact an asset or an interest in an asset;
>
> (6) The tax consequences of the property division upon the respective awards to be made to each spouse;

Case No. 2024-A-0064

(7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;

(8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;

(9) Any retirement benefits of the spouses, excluding the social security benefits of a spouse except as may be relevant for purposes of dividing a public pension;

(10) Any other factor that the court expressly finds to be relevant and equitable.

{¶50} Husband contends that there was no evidence presented that Wife contributed to Husband's career. Husband further contends that the trial court failed to consider the tax consequences of this distributive award, as required by R.C. 3105.171(F)(6). Husband asserts "[t]he Court reviewed Appellant's earnings post duration of marriage and only set forth Appellant's gross income. (JE. p. 7.) In making this equitable distribution, Husband argues that the trial court failed to consider the tax consequences of Appellant's income. In 2022, Appellee's income was $82,458.00 and she had taxes of $6,362.00, with a tax refund of $5,275.00. (Ex. EE.) Although Appellant had income of approximately $900,000.00, he had federal taxes of $315,679.00, as well as state taxes of an additional $17,000.00 to $18,000.00. (Ex. EE, T.d. 534-535.)"

{¶51} "In interpreting [R.C. 3105.171(F)(6)], the general rule is that, ordinarily, 'if the award is such that, in effect, it forces a party to dispose of an asset to meet obligations imposed by the court, the tax consequences of that transaction should be considered.' *Day v. Day* (1988), 40 Ohio App.3d 155, 159, 532 N.E.2d 201." *Krueger v. Krueger*, 2024-Ohio-2863, ¶ 107 (11th Dist.) quoting *Rice v. Rice*, 2007-Ohio-2056, ¶ 31 (11th Dist.).

Case No. 2024-A-0064

*See generally Kelley v. Kelley*, 2002-Ohio-2317, (12th Dist.). Accordingly, the tax consequences of a distributive award are to be considered but are not determinative.

{¶52} While Husband paid a significant amount of taxes towards his earnings in 2022, the lucrative year when Warren and Young dissolved and he received distributions from his ownership in the business, the statute requires that the trial court consider tax consequences incurred from the distribution of a distributive award. Wife paid significantly less in taxes for the same year. However, there was a significant disparity in earnings between the two parties for that year. Husband's earnings in 2022 were nine times higher than Wife's. Correspondingly, Husband's higher tax obligation arose from his higher earnings, not the distribution of an award.

{¶53} Moreover, there is no dispute that Husband failed to disclose income in this case.

{¶54} The trial court acknowledged that where there is financial misconduct, the trial court may make a distributive award:

> The Plaintiff further argues that use of a de facto termination date does not prevent the Court from making a distributive award of a party's separate property. The Court agrees, where such award is needed to achieve equity, or if there is financial misconduct. R.C. S3105.171(E)(7); S3105.71(E)(2).

{¶55} R.C. 3105.171(E)(2)-(E)(5) expound on distributive awards where it is found that a party has engaged in financial misconduct:

> (2) The court may make a distributive award in lieu of a division of marital property in order to achieve equity between the spouses, if the court determines that a division of the marital property in kind or in money would be impractical or burdensome.

Case No. 2024-A-0064

(3) The court shall require each spouse to disclose in a full and complete manner all marital property, separate property, and other assets, debts, income, and expenses of the spouse.

(4) If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, nondisclosure, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property.

(5) If a spouse has substantially and willfully failed to disclose marital property, separate property, or other assets, debts, income, or expenses as required under division (E)(3) of this section, the court may compensate the offended spouse with a distributive award or with a greater award of marital property not to exceed three times the value of the marital property, separate property, or other assets, debts, income, or expenses that are not disclosed by the other spouse.

{¶56} The trial court acted within its discretion when it ordered the distributive award of $350,000 to Wife.

{¶57} Husband's second assignment of error is without merit.

### Husband's Third Assignment of Error

{¶58} Husband's third assignment of error contends that the trial court erred in valuing the marital property and dividing the equity using an improper date for the home equity loan. Husband asks this Court: "Did the trial court incorrectly value the marital real estate based on expert testimony that was contradictory and was incorrect, and then compound that error by using the home equity loan balance from March 2023 well after the duration of marriage to arrive at the net equity to determine Appellee's interest in the marital real estate."

{¶59} Specifically, Husband avers that it was improper that the trial court determined a de facto termination date of July 9, 2020, for the marriage, yet found that

the home equity loan that encumbered the property had a balance of $74,800.00 as of March 2023.

**{¶60}** Husband's assignment of error relates to the valuation date the trial court used to assess the property, although under the issues for review he asserts that the trial court erred in accepting the expert witness's testimony. Under an abuse of discretion standard review, a reviewing court does not weigh the evidence. *Speece*, 2021-Ohio-170 at ¶ 19 (11th Dist.).

**{¶61}** Here, the record indicates that two valuations were performed on the marital residence, and the increased valuation between the first valuation in 2021 and the second valuation in 2022 was deemed to be due to a rapid change in the market. As the record reveals competent, credible evidence to sustain the trial court's findings, we move forward to determine whether the trial used a proper date for determining the value of the parties' home equity loan balance.

**{¶62}** As noted above, the trial court determined a de facto termination date of July 9, 2019, yet used the date of March 2023 to determine the amount of the home equity line. The judgment entry of divorce states that "[t]he Court finds that the use of the July 9, 2020 date as the de facto termination date of the marriage shall apply in all division/distributions/allocations of marital property of the parties . . . ." "The Court . . . [f]urther found that the property is encumbered by a home equity loan from Bank with a balance of $74,800.00 as of March of last (2023) year."

**{¶63}** "'A potentially equal division is to be the starting point in determining an equitable distribution of property." *Speece* at ¶ 23, citing *Habo v. Khattab*, 2013-Ohio-5809, ¶ 55, citing *Cherry v. Cherry*, 66 Ohio St.2d 348, 421 N.E.2d 1293 (1981),

Case No. 2024-A-0064

paragraph one of the syllabus. "The equitable division of marital property necessarily implies the equitable division of marital debt." *Longo v. Longo*, 11th Dist. Geauga No. 2004-G-2556, 2005-Ohio-2069, 2005 WL 1007248, ¶ 109, citing R.C. 3105.171(F)(2).'" *Speece* at ¶ 20.

**{¶64}** "This court has noted that a trial court must choose a specific date for purposes of valuation and use it consistently. In *Miller v. Miller*, this court noted, "'a party cannot pick and chose (sic) what date to valuate certain items of marital property. Valuations of the property must be determined to a specific date (i.e. date of permanent separation, de facto termination or the marriage date of the final divorce hearing.)'"'" *Frohman v. Frohman*, 2002-Ohio-7274, ¶ 16 (11th Dist.).

> Generally, "'a trial court should consistently apply the same set of dates when evaluating marital property that is subject to division and distribution in a divorce proceeding.'" *Kachmar v. Kachmar*, 7th Dist. No. 08 MA 90, 2010-Ohio-1311, ¶ 47, quoting *Angles v. Angles*, 5th Dist. No. 00CA1 (Sept. 15, 2000). "If the circumstances of a given case so require, the trial court may choose different dates for valuation purposes so long as the court adequately explains its reasons, and its decision does not constitute an abuse of discretion." *Kachmar* at ¶ 47, citing *Angles*. This court, however, has previously held that a trial court abuses its discretion when it chooses a division date that occurs after the end of the marriage. *See Crowder v. Crowder*, 10th Dist. No 98AP-1124 (Aug.5, 1999).

*Kramer v. Kramer*, 2019-Ohio-4865, ¶ 34 (10th Dist.).

**{¶65}** It is noted that Husband returned to the marital home in December 2020, after the second divorce case was filed. While the trial court may have found it necessary to make a finding that a March 2023 date of termination was equitable and necessary to determine the proper amount of the home equity line of credit on the marital residence, as the equity line constituted joint debt, it did not do that. The trial court instead determined

Case No. 2024-A-0064

a de facto termination date of July 9, 2020, and then did not provide any rationale or findings to support why it used a March 2023 date to value the home equity line of credit. The trial court then credited that amount against the value of the property, awarding half of that residual value to Wife. The trial court abused its discretion when it failed to provide any rationale or support for its use of a March 2023 to value the home equity line of credit.

{¶66} Accordingly, Husband's third assignment of error has merit.

**Husband's Fourth Assignment of Error**

{¶67} In Husband's fourth assignment of error he contends that the trial court erred when it determined that the marital portion of 134 West 46th Street Holdings was $115,190. The business was created as a holding company for the property located at 134 West 46th Street where the business of Warren and Young was once physically located. Husband had a 47% interest in the company's property which was sold in July 2023 for the net amount of $366.764.56.

{¶68} Husband contends that when the property was sold, it had a mortgage of $177,966 leaving a net equity of $188,788.56. Husband asserts that after taxes, the marital portion as of July 2020 was $88,730.62. However, the trial court found the marital portion as of July 9, 2020, to be $115,190.

{¶69} Husband argues that the trial court again used a date inconsistent with the de facto termination date, and that the figure used by the trial court was in error.

{¶70} "A trial court has considerable discretion in establishing an equitable division of marital property. *Middendorf v. Middendorf* (1998), 82 Ohio St.3d 397, 401, 696 N.E.2d 575. R.C. 31055.171(F) sets forth a list of factors to guide the trial court's discretion. *Hightower v. Hightower*, 10th Dist. No. 02AP-37, 2002-Ohio-5488, at ¶ 21. A

Case No. 2024-A-0064

trial court's failure to consider the R.C. 3105.171(F) factors when dividing marital property is an abuse of discretion. *Id.* An exhaustive recitation of each factor is unnecessary; however, the trial court must consider any factor relevant to the circumstances presented in the underlying case. See, R.C. 3105.171(C)(1); see, also, *Gest v. Gest* (Nov. 15, 2000), 9th Dist. Nos. 99CA007317 and 99CA007331, 2000 Ohio App. LEXIS 5274, at 5." *Schriefer v. Schriefer*, 2004-Ohio-2206, ¶ 12 (11th Dist.).

{¶71} The trial court found the following with regard to the 134 West 46th Street Property:

> The Court further finds that Defendant has a 47% interest in 134 W. 46th Street Holding Company. The sole purpose of this entity was holding and managing 134 W. 46th Street, Ashtabula, Ohio 44004 which sold on July 24, 2023 with net proceeds of $366,754.55. Defendant was entitled to a share of the proceeds based on his ownership percentage. The proceeds are currently being held. Net of taxes and mortgages on July 9, 2020 the marital portion of the amount being held is $115,190.

{¶72} It does appear that the trial court took into consideration the tax liability on the proceeds of the sale of the property. The trial court used the date of July 9, 2020, which was the de facto end date of the marriage.

{¶73} As such, it cannot be said that the trial court abused its discretion.

{¶74} Husband's fourth and final assignment of error is without merit.

**Wife's First Assignment of Error**

{¶75} In Wife's first assignment of error, she contends that the trial court erred when it determined that the date the marriage terminated was July 9, 2020.

> "*The date generally used for purposes of determining the value of marital property in a divorce action is the date of the final hearing.* See R.C. 3105.171(A)(2)(a). However, if the court determines that the use of this date 'would be

Case No. 2024-A-0064

inequitable, the court may select dates that it considers equitable.' R.C. 3105.171(A)(2)(b). Thus, the Ohio Supreme Court has held that under the particular circumstances of a given case, 'equity may occasionally require the valuation as of the date of the *de facto* termination of the marriage.' *Berish v. Berish* (1982), 69 Ohio St.2d 318, 320, * * *. A trial court's determination as to when to apply a valuation date other than the trial date is within the discretion of the trial court and will only be disturbed on appeal upon a demonstration of an abuse of discretion. *Gullia v. Gullia* (1994), 93 Ohio App.3d 653, 666, * * *. However, as this court has recognized, *a trial court abuses its discretion in failing to use an alternative valuation date when the record unequivocally indicates a clear and bilateral breakdown of the marriage prior to the hearing date.* See *Rogers v. Rogers*, 1997 Ohio App. LEXIS 4033 (Sept. 2, 1997), Franklin App. No. 96APF10-1333, unreported (1997 Opinions 3556, 3568)." (Emphasis added.)(Parallel citations omitted.) *Crowder* at *4-5.

(Emphasis original.) *Rhoades v. Rhoades*, 2014-Ohio-1869, ¶ 19 (11th Dist.).

{¶76} A trial court abuses its discretion when it fails to exercise sound, reasonable, and legal decision-making. *State v. Beechler*, 2010-Ohio-1900 at 62.

{¶77} Determinations of the duration of the marriage, or a de facto termination date are governed by R.C. 3105.171(A)(2):

> (2) "During the marriage" means whichever of the following is applicable:
>
> (a) Except as provided in division (A)(2)(b) of this section, the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation;
>
> (b) If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable in determining marital property, "during the marriage" means the period of time between those dates selected and specified by the court.

Case No. 2024-A-0064

**{¶78}** As this Court has recently noted, trial courts have broad discretion when determining the dates that constitute the duration of the marriage:

> "A trial court enjoys broad discretion in determining the dates constituting the duration of the marriage." *Riley v. Riley*, 11th Dist. Ashtabula No. 2012-A-0037, 2013-Ohio-1604, ¶ 42, citing *Berish v. Berish*, 69 Ohio St.2d 318, 319-320, 432 N.E.2d 183 (1982). "'[A] trial court may use a de facto termination of marriage date when the evidence clearly and bilaterally shows that it is appropriate based upon the totality of the circumstances'" *Riley* at ¶ 45, quoting *Marini v. Marini*, 11th Dist. Nos. 2005-T-0012 & 2005-T-0059, 2006-Ohio-3775, 2006 WL 2042984, ¶ 13.

(Bracketed text in original.) *Fordeley v. Fordeley*, 2023-Ohio-261, ¶ 33 (11th Dist.).

**{¶79}** Further, the trial court must consider additional factors when determining a de facto date for termination of the marriage:

> A de facto termination of marriage must be "clear and bilateral, not unilateral;" thus, the "unilateral decision" of one spouse to leave the marital residence does not, in and of itself, constitute a de facto termination of marriage. *Day v. Day* (1988), 40 Ohio App.3d 155, 158, 532 N.E.2d 201. Several factors should guide a trial court when determining whether a de facto termination of marriage date is equitable, including, but not limited to whether (1) the parties separated on less than friendly terms, (2) the parties believed the marriage ended prior to the hearing, (3) either party cohabitated with another person during the separation, (4) the parties were intimately involved during the separation, (5) the parties lived as husband and wife during the separation, (6) the parties maintained separate residences, (7) the parties utilized separate bank accounts or were/were not financially intertwined (with the exception of temporary orders), (8) either party attempted to reconcile, (9) either party retained counsel, and (10) the parties attended social functions together or vacationed together. *Rogers v. Rogers* (Sept. 2, 1997, 10th Dist. Nos. 96APF10-1333 and 96APF01-67, at *5-6, citing *Hamblin v. Hamblin* (Oct. 18, 1993), 12th Dist. Nos. CA93-03-044 and CA93-03-048; *Murphy v. Murphy* (June 22, 1988), 9th Dist. No. 2345; *Pearson v. Pearson* (May 20, 1997), 10th Dist. No. 96APF08-1100. *Mantle v. Sterry*, 10th Dist. No. 02AP-286, 2003-Ohio-6058, ¶ 12. No one factor is dispositive,

Case No. 2024-A-0064

rather, the trial court must determine the relative equities on a case-by-case basis. *Berish*, 69 Ohio St.2d at 319-320.

*Dill v. Dill*, 2008-Ohio-5310, ¶ 11 (3d Dist.).

{¶80} The trial court determined that the marriage should be regarded as terminated on July 9, 2020. To support its determination, the trial court noted that Wife filed a prior divorce action, the first divorce case, on July 7, 2020, that Husband counterclaimed for divorce, that Husband had moved in with his parents and that the parties both claimed to have been living separate and apart for more than one year previously to that date. The trial court noted that the reason the first divorce case did not go forward was because neither party showed up for the trial. A second divorce was filed the very next day. Husband again counterclaimed for divorce. Both parties sought divorce in the second divorce case on the same grounds as in the first. In its findings on the duration of the marriage, the trial court states its basis for choosing July 9, 2020 as the date of termination:

> [T]he court finds the duration of the marriage shall be the period from the date of marriage to July 9, 2020, or just after the date of the filing of the "first" divorce. The court finds that selecting a date subsequent to July 9, 2020 would be inequitable and deny the fact that the parties' marriage had irrevocably broken down by then.
>
> Immediately after the parties separated in January 2019 plaintiff opened her own bank accounts with Huntington Bank. She withdrew $25,000 from one of the parties' joint accounts right away and deposited it in one of her own separate accounts. Later she withdrew another $9,000 from another of the parties' joint accounts and deposited it in another of her own accounts.
>
> The defendant-husband for some time paid living expenses for the plaintiff and children, in addition to paying upon the mortgage of the jointly owned marital premises. While he maintains he contributed up to $298,000 in the period from

July 19, 2019 to September 2020 for these expenses for the wife and children, a review of them casts suspicion on this figure. From other testimony the court suspects much of this expense was for the parties' joint bills like insurances, children's bills, bills concerning both spouses and the like. . . . In summation, this marriage ended, at the latest, at the time of the filing of the first divorce in July, 2020. By then the parties had been separated for a long time – a period of eighteen months. Their separation was bilateral. Two bank accounts were opened by the plaintiff-wife in her sole name almost immediately on separation in January, 2019. There were no financial entanglements . . . no conjugal visits; and, only feeble (one day's worth) effort at reconciliation by meeting with a marriage counselor, which proved futile. While the parties did take a joint trip or two with their young children they stayed in separate quarters and had no conjugal visits of any kind.

{¶81} It cannot be said that the trial court abused its discretion in choosing July 9, 2019, as a "de facto" date of termination for the marriage. The trial court determined that the parties had already been living apart for some time. Shortly after the first divorce was filed the parties opened separate accounts in their own names, and never seemingly made any meaningful attempts at reconciliation again.

{¶82} Accordingly, Wife's first assignment of error is without merit.

**Wife's Second Assignment of Error**

{¶83} In Wife's second assignment of error, she asserts that the trial court erred by not dividing Husband's business interests in BTC Partners, LLC, Capital Recovery Associates, LLC, and 577 Broad Street Holdings.

{¶84} The trial court determined:

Plaintiff seeks transfer(s) of the ownership interests in certain of Defendant's businesses. These include 577 Broad Street Holdings and Capital Recovery Associates.

The Court opts to deny transfer of any such business interest to Plaintiff. This includes Capital Recovery Associates LLC and 577 Broad Street Holdings.

Case No. 2024-A-0064

The Court will not award any interest in or to a business without knowing its value and nature. The Court knows nothing about the corporate structure or operations or relations of its shareholders. Is there a covenant not to sell or convey shares in the corporation's charter or other organizational documents? Is there a "due on sale", "right of first refusal", or other restrictions on sale or transfer of shares? In its award(s) to Plaintiff herein the Court has considered (and hereby denies) a transfer of such interest(s) to Plaintiff, unless it be of a public stock (such as Andover Bank). While Defendant's pre-July 2020 earnings from such partnership or corporate interests may constitute marital property and be awarded where indicated, in this situation awarding an interest in a partnership or other interest in the business is not suitable without knowing more.

{¶85} The trial court then went on to award Wife half of the marital portions of Husband's earnings from BTC Partners, LLC and Capital Recovery Associates, LLC. The trial court further determined that Husband is the sole owner of 577 Broad Street Holdings and that it is Husband's separate property.

{¶86} As noted above, an equal division is to be the starting point in the distribution of property in a divorce. *Speece*, 2021-Ohio-170 at ¶ 20. However, "'[i]f an equal division of marital property would be inequitable, the court shall not divide the property equally but instead shall divide it between the spouses in the manner the court determines equitable. In making a division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of [R.C. 3105.171(C)(1)].'" *Id.* at ¶ 21, quoting R.C. 3105.171(C)(1).

{¶87} The trial court determined that 577 Broad Street Holdings is separate property, and R.C. 3105.171(C)(1) indicates that the parties should retain separate property unless the trial court finds it inequitable to do so. R.C. 3105.171(D).

Case No. 2024-A-0064

**{¶88}** While the trial court acknowledged that Husband had interest in Capital Recovery Associates, LLC, and BTC Partners, LLC, the trial court found that it would be inequitable to award a portion of those interests to Wife without information on the nature of the businesses and their corporate structure. The trial court then went on to divide Husband's earnings from those businesses using the de facto termination date to Wife.

**{¶89}** It cannot be said that the trial court abused its discretion by failing to exercise sound, reasonable, or legal decision making when it considered the required factors and declined to award Husband's business interests to Wife.

**{¶90}** Wife further asserts that the trial court should have divided the Andover shares of stock equally between the parties. Wife contends that despite the shares being acquired after the de facto termination date, they were acquired with marital property as they were purchased with funds from Husband's Andover Bank accounts.

**{¶91}** Again, the trial court's division of property will not be disturbed absent an abuse of discretion. *Gantous*, 2024-Ohio-1112 at ¶ 35 (11th Dist.), quoting *Speece*, 2021-Ohio-170 at ¶ 18. The trial court made the following findings and determination regarding the Andover Bank shares:

> Defendant has acquired shares of stock in Andover Bank: 600 shares as of June, 2019 are marital property, plus accretions such that by July 2020 there were 735 shares owned by Plaintiff. (sic) He acquired another 600 shares on July 20, 2020 (non-marital) for $17.50 per share. Current value of all shares is $14,476.00.
>
> ORDERED that the 735 shares first acquired are marital property, and are awarded to Defendant at $17.50 per share value; the other shares are Defendant's non-marital property.

**{¶92}** The record indicates that the 735 shares of Andover shares were purchased prior to June 2019. Husband testified that by August of 2020, after the de facto termination

Case No. 2024-A-0064

date of the marriage, he had acquired an additional 600 shares. Wife's contends that these additional 600 shares were paid for with marital funds, However, the trial court divided the marital property from Husband's Andover Bank accounts to Wife with her portion of those funds:

> Defendant shall pay to Plaintiff from the Andover accounts (total value July 2020 of $377,357.00) an amount that reflects her one-half interest therein, inasmuch as those accounts were created from Defendant's earnings at Warren and Young pre-July 2020. The share she is to receive shall be reduced by the $108,796.00 already ordered to be paid by Defendant to Plaintiff for understating his Warren and Young income. Thus, one half of $268,561.00, or One Hundred Thirty Four Thousand Two Hundred Eight Dollars Fifty Cents ($134,280.50) shall be paid by Defendant to Plaintiff within thirty (30) days of journalization hereof as her share of this marital property.

{¶93} It appears that the trial court accounted for Wife's portion of the marital property in Husband's Andover Bank accounts and distributed it to her accordingly. The trial court's division of property is not required to be equal, but it must be equitable. *Gantous* at ¶ 35, quoting *Speece* at ¶ 18.

{¶94} Here, it cannot be said that the trial court abused its discretion.

{¶95} Wife's second assignment of error is without merit.

### Wife's Third Assignment of Error

{¶96} Wife's third and final assignment of error avers that the trial court erred by determining that Husband's spousal support obligation should terminate after 72 months. Wife states in her brief that she is 55 years old and faces health challenges, including diabetes and Graves' Disease, resulting in substantial medical costs and frequent doctor visits. Wife argues, "Despite these obstacles, she maintains full-time employment but is unlikely to achieve the standard of living enjoyed during the marriage."

Case No. 2024-A-0064

{¶97} Wife contends that the trial court should have awarded her indefinite support, citing *Kunkle v. Kunkle*, 51 Ohio St. 3d 64 (1994). While *Kunkle* explains that indefinite support is permitted, it further articulates when it would be appropriate:

> Except in cases involving a marriage of long duration, parties of advanced age or homemaker-spouse with little opportunity to develop meaningful employment outside the home, where a payee spouse has the resources, ability and potential to be self-supporting, an award of sustenance alimony should provide for the termination of the award, within a reasonable time upon a date certain, in order to place a definitive limit upon the parties' rights and responsibilities.

*Id.* at 64.

{¶98} This Court has previously noted:

> A trial court has broad discretion to decide what award of spousal support is equitable based upon the facts and circumstances of each case. *Kunkle v. Kunkle*, 51 Ohio St.3d 64, 67, 554 N.E. 2d 83 (1990). When determining spousal support, the trial court must provide sufficient detail for the basis of the award to allow adequate appellate review. *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 96-97, 518 N.E.2d 1197 (1988). To satisfy the *Kaechele* standard, a trial court must provide some factual support for the award rather than simply stating it considered the factors listed in R.C. 3105.18(C)(1). *Call v. Call*, 11th Dist. Portage No. 99-P-0004, 2000 WL 522458, *3. In rendering its decision, the trial court is in the best position to observe the witnesses, which "cannot be conveyed to a reviewing court by a printed record." *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988). Moreover, we are "guided by the presumption that the trial court's findings were indeed correct." *Id.*

*Nelson v. Nelson*, 2022-Ohio-658, ¶ 6 (11th Dist.).

{¶99} The trial court must consider the following factors when making its decision regarding spousal support:

> In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable

Case No. 2024-A-0064

either in gross or in installments, the court shall consider all of the following factors:

(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;

(b) The relative earning abilities of the parties;

(c) The ages and the physical, mental, and emotional conditions of the parties;

(d) The retirement benefits of the parties;

(e) The duration of the marriage;

(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside of the home;

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to any party's contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

Case No. 2024-A-0064

(n) Any other factor that the court expressly finds to be relevant and equitable.

R.C. 3105.18(C)(1).

{¶100} The trial court has broad discretion to make determinations of child support:

"Sustenance alimony is based on need, and the trial court must have latitude to examine all of the evidence before it awards an amount that is reasonable and equitable to both parties." *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 95 (1988); *Kunkle v. Kunkle*, 51 Ohio St.3d 64, 69 (1990) ("[n]eed is '[a] relative term, the conception of which must, within reasonable limits, vary with the personal situation of the individual employing it'") (citation omitted). "In making a sustenance alimony award, the trial court must consider all the actors listed in R.C. 3105.18(C) and not base its determination upon any one of those factors taken in isolation." *Kaechele* at paragraph one of the syllabus. "In allocating property between the parties to a divorce in making an award of sustenance alimony, the trial court must indicate the basis for its award in sufficient detail to enable a reviewing court to determine that the award is fair, equitable and in accordance with the law." *Id.* at paragraph two of the syllabus.

*Adante v. Adante*, 2024-Ohio-5371, ¶ 18 (11th Dist.).

{¶101} Here, the trial court made the following findings and award to Wife regarding spousal support:

The Court finds, upon considering all the factors set forth in Ohio Revised Code S3105.18 that it is appropriate and reasonable for Defendant to pay spousal support. It finds the following factors support an order of spousal support to Plaintiff: the duration of the marriage; the age of the parties and their physical, mental and emotional conditions; the relative earning capabilities of the parties (Plaintiff current annual income, $90,929; Defendant over $200,000 plus additional bonus); the disparity of their incomes; retirement benefits of the parties and the standard of living established during the marriage; assets and liabilities of the parties; the contribution of each to the education, training, and earning capacity of the other party; and the lost income production capacity of either party that may have resulted from the parties marital responsibilities.

Case No. 2024-A-0064

> IT IS THEREFORE ORDERED, ADJUGED AND DECREED that the Defendant, commencing July 1, 2024, shall pay spousal support in the sum of $4,000 per month directly to the Plaintiff, on the 1st day of each month for seventy-two (72) months, consecutively. The Court shall retain jurisdiction to modify this order as to amount but not duration.

{¶102} The trial court considered the required factors and made its determination. The record indicates that the parties were married for a long time, from 1994 until 2019, approximately 24 years. Wife stayed home for many of those years with the parties' children, both of which now are emancipated. Despite her responsibilities at home, Wife was able to attain two masters degrees, and at the time of trial, was employed making approximately $90,000 in yearly wages. The evidence in the record supports the trial court's findings, and it appears that the trial court considered the required statutory factors. It cannot be said that the trial court abused its discretion in awarding Wife spousal support for a definite period of 72 months.

{¶103} Wife's third assignment of error is without merit.

{¶104} The judgment of the Ashtabula County Court of Common pleas is affirmed in part and reversed in part. The matter is remanded for further proceedings consistent with this Court's opinion on Husband's third assignment of error.

MATT LYNCH, J.,

EUGENE A. LUCCI, J.,

concur.

Case No. 2024-A-0064

# JUDGMENT ENTRY

For the reasons stated in the opinion of this court, it is the judgment and order of this court that the judgment of the Ashtabula County Court of Common Pleas is affirmed in part and reversed in part.  This case is remanded for further proceedings consistent with the opinion.

Costs to be taxed against the parties equally.


PRESIDING JUDGE ROBERT J. PATTON


JUDGE MATT LYNCH,
concurs


JUDGE EUGENE A. LUCCI,
concurs

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case No. 2024-A-0064